**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-01098-NYW-JPO

RODNEY C. HAMRICK,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

      Before the Court is Defendant Federal Bureau of Prisons's ("Defendant" or "BOP")
Motion to Dismiss Plaintiff's Amended Complaint (the "Motion" or "Motion to Dismiss").
[Doc. 63].[1]  In the Motion, Defendant argues that Plaintiff Rodney Hamrick ("Plaintiff" or
"Mr. Hamrick") has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).
Plaintiff has responded in opposition, [Doc. 73], and Defendant has replied, [Doc. 77].
The Court finds that oral argument would not materially assist in the disposition of the
Motion. Upon review of the Motion, the related briefing, and the applicable case law, the
Motion to Dismiss is respectfully **GRANTED** in part and **DENIED** in part.

---

[1] Where the Court refers to filings made in the Electronic Case Filing ("ECF") system in
this action, it uses the convention [Doc. ___].  When the Court refers to the ECF docket
number for a different action, it uses the convention [ECF No. ___].  In either case, the
Court identifies the page number as assigned by the ECF system.

**BACKGROUND**

The Court takes the following facts from the operative Amended Complaint, [Doc. 60], and presumes they are true for purposes of the Motion.  Mr. Hamrick is an individual incarcerated in BOP's Administrative Maximum Facility in Florence, Colorado ("ADX"). [*Id.* at ¶ 1].  At ADX, inmates are permitted to order books and other publications, but BOP officials review all materials before inmates receive them.  [*Id.*at ¶¶ 2, 12, 15]; *see also* [Doc. 74-3 (the "BOP Institutional Supplement") (establishing ADX procedures for screening publications sent to inmates)].[2]  After review, the warden may reject a publication sent to an inmate if the warden finds the publication to be "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." 28 C.F.R. § 540.71.  BOP regulations require the warden to "promptly advise the inmate in writing of the [rejection] decision and the reasons for it."  *Id.* § 540.71(d).  A rejection notice must specifically identify the objectionable content, *id.*, and include page references and quotes from the rejected publication, BOP Institutional Supplement § 3(G).

In early 2022, the ADX warden rejected two books mailed to Mr. Hamrick.  [Doc. 60 at ¶¶ 19, 25].  The first book, "Don't Forget Us Here:  Lost and Found at Guantanamo" by Mansoor Adayfi (the "Adayfi book"), was delivered to ADX in August 2021 and rejected in January 2022.  [*Id.* at ¶¶ 18–19].  The rejection notice provided to Mr. Hamrick states that the book "contains inflammatory substance and incites group demonstrations. The

---

[2] The Court considers the BOP Institutional Supplement, as well as the rejection notices discussed below, without converting Defendant's Rule 12(b)(6) motion into a summary judgment motion because they are referenced in the Amended Complaint and are central to Plaintiff's claims.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

publication depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices." [*Id.* at ¶ 20]. The notice concludes that "[t]his could be used as a tool to radicalize inmates on a larger scale if shared within the prison system." [*Id.*]. Mr. Hamrick disputes this characterization. He asserts that although the book describes inmates protesting their captivity through a "series of acts . . . nothing in the book would cause a reasonable inmate . . . to participate in a 'group demonstration.'" [*Id.* at ¶¶ 21–23].

The second book, "Guantanamo Diary" by Mohamedou Ould Slahi (the "Slahi book"), was delivered to ADX in December 2021 and rejected in April 2022. [*Id.* at ¶¶ 24–25]. Mr. Hamrick alleges that, like the Adayfi book, the Slahi book describes the author's detainment and torture at the Guantanamo Bay prison. [*Id.* at ¶ 27]. The rejection notice for the Slahi book states that the book "depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption." [*Id.* at ¶ 26]. Mr. Hamrick again contests BOP's reasons for rejection, maintaining that "[n]either book contains overt advocacy or concrete risk of violent or other unlawful action that would justify the books['] censorship." [*Id.* at ¶ 35]. Mr. Hamrick also emphasizes that neither rejection notice contains page references or quotes from the objectionable content. [*Id.* at ¶¶ 49–50]; *see also* [Doc. 74-1; Doc. 74-2 (rejection notices for both books)].

Mr. Hamrick appealed the rejections for both books through BOP's administrative appeals process. [Doc. 60 at ¶ 29]. Both appeals were denied. [*Id.* at ¶ 30]. Mr. Hamrick then initiated this lawsuit on May 1, 2023, [Doc. 1], and filed the Amended Complaint on March 27, 2024. Mr. Hamrick claims that (1) BOP violated his First Amendment rights by rejecting the books; (2) both the rejection notices and BOP's internal appeals processes

fail to provide due process under the Fifth Amendment; and (3) BOP's rejection decisions and notices are arbitrary and capricious in violation of the Administrative Procedure Act ("APA").   *See* [*id.* at ¶¶ 53–84].   Mr. Hamrick seeks a declaration that BOP's conduct violated his First and Fifth Amendment rights, as well as injunctive relief compelling BOP to deliver the rejected books.   [*Id.* at 14].[3]   BOP argues in the instant Motion that each of Mr. Hamrick's claims should be dismissed under Rule 12(b)(6).   *See* [Doc. 63].[4]

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."   *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).   A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of

---

[3] In the Amended Complaint, Mr. Hamrick also requests prospective injunctive relief covering future publications, which he apparently disavows in his Response brief.   *See* [Doc. 60 at 14; Doc. 73 at 8].   The Court need not, and does not, address the validity of the scope of Mr. Hamrick's requested relief while deciding the Motion.   *See supra* note 12.

[4] Defendant submitted an Errata to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, [Doc. 74], because it failed to attach the exhibits referenced in the Motion to Dismiss.

the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible" (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.    First Amendment Claim

Courts reviewing inmates' First Amendment claims must balance the "rights retained by inmates and those who send them publications against the deference owed to prison authorities when it comes to prison administration." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). The judiciary has long recognized that it is "ill equipped" to second-guess prison officials' expertise in maintaining the "order and security of the internal prison environment" while allowing prisoners contact with the outside world. *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989). But while prisoners' rights can be limited by penological objectives, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Turner*, 482 U.S. at 84).

At the pleading stage, courts employ a reasonableness standard to review prison regulations challenged on constitutional grounds. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner*, 482 U.S. at 89). Accordingly, to survive a Rule 12(b)(6) motion, an inmate must "plead facts from which a plausible

inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Gee*, 627 F.3d at 1188). While an inmate need not address "every potential legitimate interest," this standard may require him to "recite[] facts that might well be unnecessary in other contexts." *Gee*, 627 F.3d at 1185, 1188.

In the Motion, BOP argues that Mr. Hamrick fails to plausibly allege that BOP's justifications for rejection were not reasonably related to its security interests at ADX. BOP contends that, because ADX houses "convicted terrorists," "the [ADX] warden reasonably could conclude that two books about detention at Guantanamo Bay . . . could have inflammatory or disruptive effects within the ADX . . . ." [Doc. 63 at 8–9]. BOP further argues that many of Mr. Hamrick's allegations as to the book's contents are unresponsive to the reasons for rejection. For instance, BOP asserts that Mr. Hamrick's allegation that the books do not contain "overt advocacy or [a] concrete risk for violen[ce]," [Doc. 60 ¶ 35], is insufficient because a book that "stop[s] short" of overt advocacy might still raise a reasonable security concern, [Doc. 63 at 9]. Mr. Hamrick responds that "because the rejection notice violates the BOP policies [by failing to identify the objectionable pages or sections of the book], the Plaintiff cannot defend any accusations related to which part of the books are anathema to his penological interests." [Doc. 73 at 4].

Mr. Hamrick falls short of satisfying the standard set out in *Turner* because he does not "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Al-Owhali*, 687 F.3d at 1240 (quotation omitted). As an initial matter, Mr. Hamrick—despite being represented by

counsel—repeatedly misstates the applicable test, framing the inquiry as whether the rejections were "in the penological interests of the Plaintiff." *See, e.g.*, [Doc. 73 at 2, 4]. *Turner* and its progeny make clear, however, that the analysis turns on the penological interests of the prison as a whole, not the challenging inmate. *See Jacklovich*, 392 F.3d at 426 (explaining that inmates' First Amendment right to receive information is balanced against "the legitimate penological objectives of the prison"). And Mr. Hamrick's claims that the books pose no risk to prison security are either conclusory or unresponsive to BOP's justifications for rejection. For example, the allegation that Mr. Adayfi does not know how to make a weapon misses BOP's argument that depictions of protest at Guantanamo Bay, even without "overt advocacy," might provoke unrest at ADX. *Compare* [Doc. 60 at ¶¶ 21–22, 35], *with* [Doc. 63 at 8–9]; *see also Al-Owhali*, 687 F.3d at 1242 (upholding warden's decision to reject Arabic-language newspapers to prevent ADX inmate's access to potentially inflammatory information).

Similarly unavailing is Mr. Hamrick's argument that the lack of specificity in the rejection notices denies him the ability to adequately press his First Amendment claim. The fact that BOP failed to include page numbers or other details in the rejection notices has little bearing on the reasonableness of penological interests behind the rejections. Sparse as they are, the rejection notices still explain that BOP rejected the books because it determined they posed a threat to order and security at ADX. *See* [Doc. 74-1 at 2 (rejecting Adayfi book due in part to "inflammatory substance and [the risk of] incit[ing] group demonstrations)]; [Doc. 74-2 at 2 (rejecting Slahi book because it depicts activities that could lead to "physical violence or group disruption")]. Moreover, because prison authorities may exercise "broad discretion to limit incoming information," *Al-Owhali*, 687

F.3d at 1242, courts have declined to overturn generalized justifications for rejection, *see Jabarah v. Wray*, No. 21-cv-01047-NYW-NRN, 2024 WL 816410, at *7 (D. Colo. Jan. 30, 2024) (recommending dismissal of First Amendment claim where inmate complained rejection notice was "very vague," but failed to plausibly allege that rejection was unrelated to legitimate penological interests), *report and recommendation adopted*,2024 WL 810021 (D. Colo. Feb. 27, 2024); *cf. Jones v. Salt Lake County*, 503 F.3d 1147, 1156 (10th Cir. 2007) (upholding prison regulation that banned "technical publications," which officials used to reject materials concerning "weapons, contraband[,] and escapes").  In sum, Mr. Hamrick fails to plausibly allege facts that would permit the conclusion that BOP's reasons for rejection were not reasonably related to a legitimate penological interest.[5]   The Court therefore **GRANTS** the Motion to Dismiss with respect to Mr. Hamrick's First Amendment claim.

## II.    Fifth Amendment Claim

Mr. Hamrick next asserts a Fifth Amendment procedural due process claim, arguing that BOP failed to provide him with timely and adequate notice of the rejections. [Doc. 60 at ¶¶ 65–70].  To successfully allege a procedural due process claim, a plaintiff must demonstrate that (1) he possesses a protected liberty or property interest; and

---

[5] Plaintiff also relies heavily on *Prison Legal News v. Fed. Bureau of Prisons* ("*PLN*"), 944 F.3d 868 (10th Cir. 2019), as proof of BOP's "censorious, unconstitutional behavior."  *See* [Doc. 60 ¶¶ 47–49].  Large portions of the Amended Complaint closely resemble the complaint in that case.  *Compare* [*id.* at ¶¶ 53–84], *with* Complaint, *Prison Legal News v. Fed. Bureau of Prisons*, No. 15-cv-02184-RM-STV (D. Colo.), [ECF No. 1 at ¶¶ 51–81].  But Plaintiff's reliance on *PLN* is misplaced.  The Tenth Circuit never reached the merits in *PLN* because BOP changed its regulations, which rendered the case moot.  *See* 944 F.3d at 882.  And the policy at issue there—that ADX officials would automatically reject any publication containing the name of ADX inmates or staff—is distinguishable from the individualized review that took place here.  *See id.* at 874.

(2) that he was not afforded an "appropriate level of process." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016). Neither side disputes that inmates have a "qualified liberty interest in uncensored communications that are protected by the First Amendment." *Jacklovich*, 392 F.3d at 433 (10th Cir. 2004) (citing *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled in part on other grounds by Thornburgh*, 490 U.S. 401); *see also* [Doc. 63 at 10–12]. The Court therefore focuses on whether, based on Plaintiff's allegations, BOP provided Plaintiff with an appropriate level of process in rejecting the books.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Stanko v. Maher*, 419 F.3d 1107, 1115 (10th Cir. 2005) (quotation omitted). When censoring or rejecting an inmate's communications, prison administrators must afford the inmate due process by furnishing "minimum procedural safeguards." *Procunier*, 416 U.S. at 417. In practice, this requirement means that inmates must (1) receive notice of a rejection; (2) "be given a reasonable opportunity to protest that decision"; and (3) "have their complaints referred to a prison official other than the one who originally disapproved the correspondence." *Jacklovich*, 392 F.3d at 433 (quoting *Procunier*, 416 U.S. at 418). In the Motion, BOP argues that Mr. Hamrick received sufficient process under *Procunier* because he received written notices of both rejections, had an opportunity to appeal, and had his appeals reviewed by BOP officials separate from the officials at ADX. [Doc. 63 at 11].

In his Amended Complaint and Response, Mr. Hamrick raises a slew of arguments as to how BOP's process failed to comply with *Procunier*'s minimum safeguards. The Court begins with Mr. Hamrick's assertion that the four-month delay between the books'

delivery to ADX's mailroom and his receipt of the rejection notices constitutes inadequate notice. [Doc. 60 at ¶ 4]. The Court finds that the four-month delay here did not deprive Mr. Hamrick of adequate process, given that the publications under review were "book-length." [Doc. 63 at 11]; *see Jabarah*, 2024 WL 816410, at *8 (finding plausible due process claim where plaintiff alleged a four-year delay in receiving written rejection notice for books); *Prison Legal News v. Fed. Bureau of Prisons*, No. 15-cv-02184-RM-STV, 2017 WL 10619942, at *11 (D. Colo. Feb. 23, 2017) (finding plausible due process claim where publisher alleged six-to-nine month delay in rejection notices for news periodicals), *report and recommendation adopted*, 2017 WL 10619904 (D. Colo. Aug. 14, 2017). More importantly, there is no allegation that the delay prejudiced Mr. Hamrick's ability to appeal the rejection decisions. *See Jabarah*, 2024 WL 816410, at *8 (emphasizing that delay in written notice plausibly denied plaintiff a "reasonable opportunity to protest" the rejection (quoting *Procunier*, 416 U.S. at 418)); *cf. Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011) (holding that delay in holding prisoner disciplinary hearing did not violate due process because inmate "suffered no prejudice as a result of the delays").

Mr. Hamrick next alleges that "the notices do not provide sufficient detail to the Plaintiff to place him on notice of the reasons for the rejection and allow for any meaningful appeal." [Doc. 60 at ¶ 66]. The Court is aware of no authority defining precisely how much detail is required in a rejection notice. However, the Court agrees with Mr. Hamrick that the notice must at least sufficiently indicate the reasons for rejection in order to ensure a "reasonable opportunity to protest." *Procunier*, 416 U.S. at 418. Mr. Hamrick contends that BOP missed that threshold here. [Doc. 60 at ¶ 66]. But that contention is belied by the Amended Complaint itself, which demonstrates an understanding of the security

10

concerns behind the rejections and attempts to refute them.  *See* [*id.* at ¶¶ 20–28].
Further, Mr. Hamrick did not need to rely on the rejection notices to provide him with
information about the books' content.  BOP regulations require the warden to allow an
inmate appealing a rejection to "review [the] material for purposes of filing an appeal"
unless "such review may provide the inmate with information" that would threaten the
security or order of the prison.  28 C.F.R. § 540.71(d).[6]  Mr. Hamrick does not allege that
BOP denied him access to the Adayfi and Slahi books when he prepared his appeal, and
the notices were evidently sufficient to apprise him of BOP's reasons for rejection.  The
Court therefore concludes that Mr. Hamrick fails to sufficiently allege that the rejection
notices were constitutionally inadequate.[7]

Finally, Mr. Hamrick concedes that he received an appeal through BOP's
Administrative Remedy Program.  [Doc. 60 at ¶¶ 16, 29–31].  His claim that BOP
regulations undermine appeals by requiring BOP to return rejected books to their
publishers before the appeal process concludes, [*id.* at ¶ 68], is incorrect, 28 C.F.R.
§ 540.71(e).  Because Mr. Hamrick fails to plausibly allege that he did not receive the
minimum procedural safeguards required by the Due Process Clause, the Court
respectfully **GRANTS** the Motion to Dismiss with respect to the Fifth Amendment claim.

---

[6] The Court acknowledges the difficult situation that could arise where BOP provides a
rejection notice as brief as the notice for the Slahi book, then denies an appealing inmate
from reviewing the book under § 540.71(d).  But, based on the allegations in the Amended
Complaint, that is not the case here.

[7] Mr. Hamrick also argues that the rejection notices' alleged failure to comply with BOP's
regulatory and procedural requirements constitutes a Fifth Amendment violation.  [Doc.
73 at 4–5].  However, because the Court finds that the notices satisfied the Due Process
Clause, Mr. Hamrick cannot sustain his Fifth Amendment claim with administrative
violations alone.  *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A]
failure to adhere to administrative regulations does not equate to a constitutional
violation.").

**III.    APA Claim**

Mr. Hamrick argues that BOP violated the APA both substantively and procedurally.  Substantively, Mr. Hamrick alleges there is "no discernible connection" between Guantanamo Bay prison and ADX, making its decision to censor the Adayfi and Slahi books arbitrary and capricious.  [Doc. 60 at ¶ 81].  Procedurally, Mr. Hamrick contends that BOP failed to follow its own regulations requiring rejection notices to contain page numbers and specific references to the objectionable material.  [*Id.* at ¶¶ 77–78; Doc. 73 at 6–7].  BOP responds that the rejection decisions are substantively unreviewable under the APA because they are committed to agency discretion by law.  [Doc. 63 at 12–14].  As for Mr. Hamrick's procedural argument, BOP argues that any failure to specify which sections of the books were objectionable amounts to harmless error.  [Doc. 77 at 5–6].

The Court additionally notes that, although Mr. Hamrick styles his APA arguments as a single claim, *see* [Doc. 60 at ¶¶ 74–84], he actually challenges two distinct agency actions—the rejection of the Slahi book and the rejection of the Adayfi book.  Thus, while the initial reviewability analysis applies equally to both of Mr. Hamrick's challenges, the Court finds it appropriate to divide Mr. Hamrick's APA claim into two sub-claims for review: (1) Mr. Hamrick's challenge to BOP's decision to reject the Slahi book ("Claim III-1"); and (2) Mr. Hamrick's challenge to BOP's decision to reject the Adayfi book ("Claim III-2").

**A.    Reviewability of BOP's Rejection Decisions**

BOP contends that the ADX warden's decision to reject the books is unreviewable because the matter is committed to agency discretion.  The APA provides for judicial

review of "agency action," 5 U.S.C. § 702,[8] and empowers courts to set aside action that
is "arbitrary, capricious, [or] an abuse of discretion," *id.* § 706(2)(A). However, the APA
exempts from review "agency action [that] is committed to agency discretion by law." *Id.*
§ 701(a)(2). Interpreting this provision, the Supreme Court has held that an action is
committed to agency discretion when the authorizing statute is so broad that there is "no
law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing *Citizens to Pres.
Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)) ("[R]eview is not to be had if the
statute is drawn so that a court would have no meaningful standard against which to judge
the agency's exercise of discretion.").

This exception to the APA's "basic presumption of judicial review" should be read
"quite narrowly." *Dep't of Com. v. New York*, 588 U.S. 752, 771–72 (2019) (quotations
omitted). The fact that a statute or rule confers some discretion on the agency is
insufficient to invoke the exception, because "[a] court could never determine that an
agency abused its discretion if all matters committed to agency discretion were
unreviewable." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018).
Moreover, even if the relevant statute grants broad discretion, an agency's regulations—
which carry the force of law—may still provide a "meaningful standard" for judicial review.
*See McAlpine v. United States*, 112 F.3d 1429, 1433 (collecting cases); *see also Ctr. for
Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988) ("[R]egulations promulgated
by an administrative agency in carrying out its statutory mandate can provide standards
for judicial review of agency action."). Because of the presumptive rule of judicial review,

---

[8] BOP does not dispute that the rejection decisions constitute "agency action" under the
APA. *See* 5 U.S.C. §§ 551(13), 701(b)(2).

§ 702(a) is generally reserved for "agency decisions that courts have traditionally regarded as unreviewable." *Weyerhaeuser*, 586 U.S. at 23 (first citing *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (allocations from lump-sum appropriation are unreviewable); then citing *ICC v. Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (decision not to reconsider final agency action is unreviewable)). Section 701(a)(2) thus precludes review only if a court remains convinced, after considering the relevant statutory and regulatory text, that "no meaningful standard" can be applied to review the challenged action. *See Dep't of Com.*, 588 U.S. at 771–73.

Here, the ADX warden's authority to reject the books arises from BOP regulations permitting rejection "only if [the publication] is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." 28 C.F.R. § 540.71(b). The regulations prohibit a warden from rejecting a publication "solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant." *Id.* Finally, the regulation offers a non-exclusive list of seven criteria that justify rejection:

(1) [The publication] depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;

(2) It depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of Bureau of Prisons institutions;

(3) It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

(4) It is written in code;

(5) It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;

(6) It encourages or instructs in the commission of criminal activity;

(7) It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

*Id.* While BOP correctly observes that the regulation gives the ADX warden significant discretion, the Court is respectfully unconvinced that there is no meaningful standard available for judicial review.

The BOP regulation at issue here provides "law to apply" because it conditions a warden's discretion to censor a publication on his finding that the material is either "detrimental" to the facility's security or might facilitate criminal activity. In doing so, the regulation provides both a standard and "objective criteria that the decisionmaker is required to consider." *McAlpine*, 112 F.3d at 1434 (finding Secretary of the Interior's discretionary decision to acquire land was reviewable based on regulation prescribing list of seven factors to consider when exercising discretion); *see also City of Colorado Springs v. Solis*, 589 F.3d 1121, 1126, 1130 (10th Cir. 2009) (finding Department of Labor decision to reject objections to employee protection agreements to be reviewable when regulations defined characteristics that would make an objection "sufficient"). The regulatory guidance here makes this case distinguishable from other decisions finding BOP action unreviewable where the agency acted pursuant only to its general statutory directive to manage federal prisons. *See, e.g.*, *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1252–53 (D. Colo. 2011) (finding BOP security classifications for different facilities are unreviewable). And although the regulation does not instruct a warden precisely how to apply the criteria for rejection, the fact that it delineates which factors may be considered is sufficient to provide a meaningful standard for review. *See McAlpine*, 112 F.3d at 1434(citing *Overton Park*, 401 U.S. at 416).

Before proceeding to a substantive review of the rejection decisions, the Court pauses to address BOP's argument that "the unique challenges of prison administration" merit application of § 701(a)(2) here.  [Doc. 63 at 12–14].  The Court agrees that judicial review of prison management is and ought to be deferential.  But none of the cases BOP cites for this general proposition involved APA claims.[9]  Moreover, the body of case law involving constitutional challenges to censorship of inmates' communications suggests that courts possess some competence to review censorship decisions.  And because, as explained below, the standard of review in an APA context is already deferential to the agency, there is minimal risk of a flood of litigation or other "disruptive practical consequences" from the Court's finding that BOP's decisions to reject publications pursuant to its regulations are reviewable under the APA.  *See Webster v. Doe*, 486 U.S. 592, 609 (Scalia, J., dissenting) (quotation omitted).  Accordingly, the Court finds that BOP's rejection decisions are reviewable under the APA.

## B.    Review of BOP's Rejection Decisions

The Court turns to whether Mr. Hamrick has adequately alleged that BOP's rejection decisions were arbitrary, capricious, or an abuse of discretion.  *See* 5 U.S.C. § 706.  An agency action is arbitrary and capricious if:

---

[9] The single APA case that BOP provides, *White v. True*, found that BOP's decision to restrict an inmate's outgoing correspondence was unreviewable based on that court's analysis of a BOP program statement.  No. 3:19-cv-00418-JPG, 2020 WL 1352112, at *3 (S.D. Ill. Mar. 23, 2020).  As the court in *White* observed, BOP program statements lack the force of law and do not undergo notice and comment.  *Id.* (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).  Here, the analysis turns on the text of the applicable BOP regulation, which was subject to notice and comment, carries the force of law, and provides a meaningful standard for review.  *See* Control, Custody, Care, Treatment, and Instruction of Inmates, 44 Fed. Reg. 38,235, 38,258, 38,260 (June 29, 1979).  The Court respectfully concludes that *White* is not controlling here.

the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*Hillsdale Env't Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012) (quotation omitted).  This standard of review is thorough but deferential, *id.*, and courts do not overturn agency action where there is a rational basis for the decision, *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 643 (10th Cir. 1990).  But no matter how thoughtful the rationale, an agency's failure to follow its own regulations amounts to arbitrary and capricious action.  *N.M. Farm & Livestock Bureau v. U.S. Dep't of Interior*, 952 F.3d 1216, 1231 (10th Cir. 2020).   As explained above, the Court construes Mr. Hamrick's challenge to BOP's rejection of the Slahi book as Claim III-1 and his challenge as to the Adayfi book as Claim III-2.

### 1.    Claim III-1:  Challenges to BOP's Rejection of the Slahi Book

Mr. Hamrick challenges BOP's decision to reject the Slahi book both in substance and in procedure.   The allegations underlying Mr. Hamrick's procedural argument— namely, that BOP's rejection notice violates its own regulations—establish a plausible APA claim.   BOP's regulations require a warden to inform an inmate in writing of a rejection decision and the reasons for it.  28 C.F.R. 540.71(d).  Moreover, the rejection notice must identify the "specific article(s) or material(s) considered objectionable," *id.*, and ADX's Institutional Supplement further requires "page references and quotes from the incoming publication," BOP Institutional Supplement § 3(G). Mr. Hamrick alleges that, in addition to omitting page numbers, BOP provided no explanation as to which sections or pages of the Slahi book were objectionable.  And he alleges that the rejection notice

contained only a "mere recitation of the regulation [that] does not inform the Plaintiff—or his counsel—of the actual reasons for a given rejection." [Doc. 60 at ¶ 78]. Accordingly, the Court finds that Mr. Hamrick has adequately alleged that BOP's rejection decision for the Slahi book was arbitrary and capricious for its to comply with BOP's own regulations.

As for the substantive argument, Mr. Hamrick argues that BOP failed to engage in reasoned decision-making when it rejected the Slahi book. Mr. Hamrick alleges that (1) the entire book was censored "based on a single line or two of supposedly objectionable material"; (2) the information in the book is "readily available to inmates through other channels"; and (3) the book has "no discernible connection to ADX." [Doc. 60 at ¶¶ 79–81]. The rejection notice for the Slahi book does not undercut these allegations, because it contains only a single-sentence explanation that does nothing more than restate BOP's regulations. *Compare* [Doc. 74-2 at 2 ("The incoming publication depicts, describes or encourages activities which may lead to the use of physical violence or group disruption.")], *with* 28 C.F.R. § 540.71(b)(5) (permitting rejection if a publication "depicts, describes or encourages activities which may lead to the use of physical violence or group disruption"). Therefore, taking Mr. Hamrick's allegations as true, the Court concludes that Mr. Hamrick adequately alleges that BOP acted arbitrarily and capriciously when it rejected the Slahi book.[10]

---

[10] The additional context and arguments in the Motion that explain the penological interests behind the rejection decisions cannot be considered in the APA context, where the Court's review is confined to "the agency's reasoning at the time of decisionmaking." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1294 (10th Cir. 2024) (quotation omitted); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1947) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."). Thus, the justifications for rejection in BOP's briefing that enabled the dismissal of Plaintiff's constitutional claims do not apply here.

2.    **Claim III-2:  Challenges to BOP's Rejection of the Adayfi Book**

Mr. Hamrick's challenge to BOP's rejection of the Adayfi book contains nearly identical allegations to his challenge to the rejection of the Slahi book.  Procedurally, he contends that BOP failed to include in the rejection notice any page numbers, identification of what material was objectionable, or sufficient reasoning for the decision. [Doc. 73 at 6].  And he makes the same argument that BOP's substantive rejection decision was arbitrary and capricious.  [Doc. 60 at ¶¶ 79–81].  As an initial matter, the Court finds that Mr. Hamrick adequately alleges that BOP procedurally violated the APA when it failed to include page numbers or specifically identify what material in the Adayfi book was objectionable.  However, for reasons explained below, the Court does not agree that the rejection notice for the Adayfi book fails to provide the reasons for rejection.

Mr. Hamrick fails to adequately allege that BOP's substantive decision to reject the Adayfi book was arbitrary and capricious, because the rejection notice contains a sufficiently detailed explanation for the decision.  The rejection notice for the Adayfi book states that:  "The incoming publication contains inflammatory substance and incites group demonstrations.  The publication depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices.  This could be used as a tool to radicalize inmates on a larger scale if shared within the prison system."  [Doc. 74-1 at 2].  While some of this explanation borrows language from the applicable regulation, *see* 28 C.F.R. 540.71(b)(1), the Court will not fault BOP for using the language of its regulations to justify a rejection decision when BOP also made an effort to connect the regulatory rejection criteria to the publication at issue.  That effort enables the Court to discern the rationale behind the rejection decision.  *See Garland v. Ming Dai*, 593 U.S.

357, 369 (2021) ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." (quotation omitted)).   And the reasoning in the rejection notice sufficiently undermines Mr. Hamrick's assertions such that the Court finds that Mr. Hamrick fails to allege "sufficient factual matter" to support his substantive APA claim for the Adayfi book.  *Iqbal*, 556 U.S. at 678; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (holding that courts need not accept plaintiff's allegations as true if they conflict with a properly considered document).   If the Adayfi book does contain inflammatory substance or instructions for constructing bombs or weapons, the Court cannot credit Mr. Hamrick's general, unsupported claim that all the information in the book is "readily available to inmates through other channels."   [Doc. 60 at ¶ 80].   Similarly, the rejection notice suggests that more than two lines of the Adayfi book are objectionable, and Mr. Hamrick provides no detailed allegations supporting his assertion to the contrary.   Accordingly, the Court concludes that Mr. Hamrick has not adequately alleged that BOP's substantive decision to reject the Adayfi book was arbitrary and capricious.

### C.    Prejudicial Error

Before courts set aside agency action, the APA cautions them to take "due account" of the "rule of prejudicial error."  5 U.S.C. § 706.  Even if an agency errs, courts will not disturb the agency's decision unless the plaintiff can show he was harmed by the error.  *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that burden of showing prejudice "normally" falls on party challenging agency action).   The fact that the agency ultimately reached a decision adverse to the plaintiff does not constitute prejudice on its own.  *See Intercargo*

*Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996) ("A party is not 'prejudiced' by a technical defect simply because that party will lose its case if the defect is disregarded.").  While the prejudicial error determination is "case-specific," *Shinseki*, 556 U.S. at 411–12, a plaintiff generally must show that a procedural error either affected the outcome of the agency's decision or impacted the plaintiff's ability to challenge the agency action, *see PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration."); *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 224, 237–38 (D.C. Cir. 2008) (recognizing, in rulemaking context, that party can show prejudice if it could have "mount[ed] a credible challenge" but for the error).

In the Reply, BOP argues that Plaintiff has not suffered prejudice from BOP's failure to include the required information in the rejection notices.  [Doc. 77 at 6].  BOP likens this case to *National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).  There, the Supreme Court declined to overturn an agency action based on a "stray statement" in the administrative record that was inconsistent with the agency's litigation position.  *Home Builders*, 551 U.S. at 659.  BOP argues that the "omission of page numbers from the rejection notices . . . is similarly collateral to the warden's substantive decision to reject the books . . . ."  [Doc. 77 at 6].

### 1.    Claim III-1

As an initial matter, Mr. Hamrick's substantive challenge to the rejection of the Slahi book easily survives this test, because an error in BOP's substantive reasoning implicates Mr. Hamrick's "substantial rights" rather than a trivial procedural requirement.

*See Shinseki*, 556 U.S. at 407.  BOP does not appear to dispute that a substantive error would be prejudicial, as the Motion focuses only on whether BOP's omission of page numbers constitutes harmless error.  [Doc. 77 at 5–6].

As for the procedural argument, the error alleged in the Slahi book's rejection notice is more than omitted page numbers.  Mr. Hamrick alleges that BOP's failure to provide page numbers or any other explanation of what material in the book was objectionable deprived him of "notice of the reasons for the rejection and [an opportunity] for any meaningful appeal."  [Doc. 60 at ¶ 66].  In other words, Mr. Hamrick argues that he suffered prejudice from the alleged error not during the initial rejection decision–which BOP points out occurred before the notice was issued—but during his administrative appeal.

Those allegations exceed the "stray statement" in *Home Builders*, whose inaccuracy could be readily determined from the remainder of the administrative record and court filings.  551 U.S. at 659.  Unlike the plaintiffs in *Home Builders*, Mr. Hamrick had no administrative record to fall back on to inform himself of the agency's underlying rationale.  Without page numbers, a specification of which material was objectionable, or an explanation of the "actual reasons for a given rejection," [Doc. 60 at ¶ 78], Mr. Hamrick's only insight into BOP's reason for rejecting the Slahi book was BOP's one-sentence explanation parroting its regulations.  Mr. Hamrick alleges that this failure was more than a mere technical error because it deprived him of meaningful information that explained the decision and would have aided him in his appeal.  *See New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 708 (10th Cir. 2009) (finding prejudicial error where agency violated regulations requiring it to disclose, in advance, its

modifications to proposed management plan, which deprived public of "meaningful information" during comment period); *see also Shinseki*, 556 U.S. at 414 (upholding remand to agency where plaintiff was denied benefits and, due to agency's failure to provide notice, missed medical examination that could have revealed evidence to help her claim). Moreover, the scarcity of detail in the rejection notice prevents the Court from finding at this stage that BOP's alleged failure to provide the requisite details in the notice "clearly had no bearing on the procedure used or the substance of the decision reached." *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)).

The Court notes that, upon review of the whole record of BOP's rejection decision,[11] the errors alleged by Mr. Hamrick may well prove to be harmless. For now, though, the Court concludes that Mr. Hamrick has adequately alleged that he was prejudiced by BOP's failure to follow its regulations when it rejected the Slahi book. The Motion to Dismiss is thus **DENIED** with respect to Claim III-1.

### 2. Claim III-2

Because the Court concludes that the rejection notice for the Adayfi book sufficiently explains BOP's reasons for rejection, Mr. Hamrick must adequately allege that he was prejudiced by BOP's failure to include page numbers or other identifications of

---

[11] The APA requires that judicial review encompass the "whole record" of the challenged agency action. 5 U.S.C. § 706. "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). Additional discovery on Claim III-1 will be unnecessary so long as BOP submits to the Court "nothing more and nothing less" than the whole administrative record for its decision to reject the Slahi book. *Id.*; *see also Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011) ("Discovery typically is not available in APA cases." (quotation omitted)).

what material was objectionable.  Given that Mr. Hamrick had notice of BOP's reasons for rejection, and that he apparently had access to the Adayfi book when preparing his review, *see* 28 C.F.R. § 540.71(d), the Court finds that Mr. Hamrick fails to meet this burden.  Mr. Hamrick provides only conclusory allegations that, without page numbers, he was unable to identify objectionable content in the Adayfi book or pursue a meaningful appeal.  [Doc. 60 at ¶ 66].  Notably, he does not dispute the statement in the rejection notice that the Adayfi book contains "procedures for the construction or use of weapons, ammunition, bombs or incendiary devices."  *See* [Doc. 74-1 at 2].  Those sections of the book would presumably be easy to identify.

In sum, Mr. Hamrick does not plausibly allege that BOP's omission of page numbers or other details from the rejection notice was more than a technical error.  Nor does he allege that BOP's rejection decision or the ensuing administrative appeal might have reached different results had the rejection notices complied perfectly with BOP's regulations.  The Court therefore agrees with BOP that *Home Builders* and similar cases should control here.  *See Home Builders*, 551 U.S. at 660 (finding no prejudice from technical error with "no effect on the underlying agency action being challenged"); *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1383–84 (Fed. Cir. 2017) (observing that a mere "technical failure," such as "omission of the requisite language" from a notice, is likely to constitute harmless error (citing *Intercargo Ins. Co.*, 83 F.3d at 396)).  Because Mr. Hamrick fails to adequately allege that he was prejudiced by BOP's alleged violations of its regulations, the Motion to Dismiss is **GRANTED** with respect to Claim III-2.[12]

---

[12] In the Amended Complaint, Mr. Hamrick asks for a sweeping prospective injunction

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion to Dismiss [Doc. 63] is **GRANTED in part** and **DENIED in part**;

(2)    Plaintiff's First and Fifth Amendment claims are **DISMISSED** with prejudice;[13]

(3)    Claim III, insofar as Plaintiff challenges the BOP's rejection decision and notice for the Adayfi book, is **DISMISSED without prejudice**;

(4)    Claim III, insofar as Plaintiff challenges the BOP's rejection decision and notice for the Slahi book, **REMAINS** as the sole claim; and

---

affecting BOP's publication review policies. *See generally* [Doc. 60 at 14]. In the Response, he clarifies that he only requests an order as to the Adayfi and Slahi books. [Doc. 73 at 8]. Because the Court dismisses all of Mr. Hamrick's claims except for the APA claim related to the Slahi book, the only relief available to Mr. Hamrick going forward would be remanding the Slahi book's rejection decision back to BOP. *See Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023). The Court takes no position at this time as to whether remand with or without vacatur would be appropriate. *See id.*

[13] Dismissal with prejudice is appropriate only when it is patently obvious the plaintiff cannot plead a plausible claim for relief and thus amendment would be futile. *See Gee*, 627 F.3d at 1195 (explaining that dismissal without prejudice to allow amendment of the complaint is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to him" (quotation omitted)); *cf. Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (quotation omitted)). Plaintiff has already amended his complaint after obtaining representation. The Court therefore concludes that further amendment for Plaintiff's constitutional claims would be futile.

(5)    The Parties are **DIRECTED to CONTACT** jointly the Chambers of the
Honorable Timothy P. O'Hara no later than **November 19, 2024** to set a
Status Conference to discuss the deadline for the filing of the administrative
record and the briefing on the remaining APA claim brought pursuant to
Claim III.


DATED:  November 12, 2024                    BY THE COURT:

                                             _____
                                             Nina Y. Wang
                                             United States District Judge